UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUJIT KALE; SHANMUGA PRIYA SABARIVASAN; NIKHIL TYAGI; SHILPI NAYAK; SHANTHI POTLA; SANDEEP MUVVA; SADANA BORRA; KARTEEK KOMATI; JUEXIAO NING; FANGFANG WANG; SRUJANA DONGARI; PRASANTH KODURI; MANANDEEP SINGH; NATASHA DUBEY,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; TRACY RENAUD, in her official capacity as Acting Director of United States Citizenship and Immigration Services; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendants. | Civil Action No. 21-08095 (FLW)<br><br>**MEMORANDUM OPINION** |

**THIS MATTER** having been opened to the Court by William A. Stock, Esq., counsel for Plaintiffs, Sujit Kale, Shanmuga Priya Sabarivasan, Nikhil Tyagi, Shilpi Nayak, Shanthi Potla, Sandeep Muvva, Sadana Borra, Karteek Komati, Juexiao Ning, Fangfang Wang, Srujana Dongari, Prasanth Koduri, Manandeep Singh, Natasha Dubey (collectively "Plaintiffs"), on a motion for a temporary restraining order (ECF No. 8), pursuant to Fed. R. Civ. P. 65(b); it appearing that Defendants Alejandro Mayorkas ("Mayorkas"), Tracy Renaud ("Renaud"), and the United States Citizenship and Immigration Services ("USCIS") (collectively, "Defendants") have opposed the Motion; the Court having considered the parties' submissions without oral argument, pursuant to Fed. R. Civ. P. 78, makes the following findings:

1. On April 3, 2021, Plaintiffs filed their Complaint in this action, requesting that the Court issue a Writ of Mandamus to compel an adjudication on Plaintiffs' Forms I-485,

1

Application to Register Permanent Residence. Specifically, Plaintiffs claim to have "invested $500,000 through the EB-5, Regional Center Program ("Regional Center Program") in order to obtain green cards for themselves and their families." However, according to Plaintiff, because the Regional Center Program is set to expire on June 30, 2021, unless this Court acts to compel certain action related to the Forms I-485, Plaintiffs may "lose their opportunity to become permanent residents of the United States." Thereafter, on June 12, 2021, less than three weeks from the purported expiration of the Regional Center Program, Plaintiffs filed the instant motion for injunctive relief. In response, on June 14, 2021, the Court issued an expedited briefing schedule to ensure resolution of this Motion prior to June 30, 2021. (ECF No. 9.) Thus, the need for the Court's expediency in adjudicating this matter, particularly in the form of this Memorandum Opinion, resulted from Plaintiffs' delay in seeking an 11th-hour injunction despite the fact that they filed this matter in early April 2021.

2. As background, in 1990, Congress amended the Immigration and Nationality Act of 1965, allocating, *inter alia*, 10,000 immigrant visas per year to foreign nationals seeking Lawful Permanent Resident ("LPR") status on the basis of their capital investments in the United States. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)). Pursuant to the so-called "Immigrant Investor Program," also known as the "Regional Center Program," foreign nationals may be eligible for an employment-based, fifth preference ("EB-5") immigrant visa if they have invested, or are actively in the process of investing, a certain monetary sum in a qualifying New Commercial Enterprise ("NCE"), and that investment results in the creation of at least ten jobs for United States Workers. *See* 8 U.S.C. § 1153(b)(5)(A)-(D); *see also* 8 C.F.R §

204.6(a)-(j). During the relevant time period, Congress set the qualifying capital investment level for noncitizens who participate in the Regional Center Program at $1 million, but petitioners may qualify by investing at least $500,000 in a "targeted employment area," including in "a rural area or an area which has experienced high unemployment." 8 U.S.C. § 1153(b)(5)(C); 8 C.F.R. § 204.6(f) (2019); 8 U.S.C. § 1153(b)(5)(B)(ii). The purpose of the Regional Center Program was to promote foreign direct investment into, and job creation within, the United States.

3. In order to become an LPR through the Regional Center Program, a foreign national must initially file with USCIS a Form I-526, Immigrant Petition by Alien Entrepreneur, which, if approved, makes the foreign national eligible to receive an employment-based, fifth preference immigrant visa, *see* generally 8 U.S.C. § 1153(b)(5). Thus, if USCIS approves an I-526 petition, the foreign national (and dependent family members) may apply for two-year conditional permanent resident status ("conditional LPR") either within the United States (known as "adjustment of status") or overseas from the State Department at the United States consular post in the petitioner's home country (known as "consular processing"). *See* 8 U.S.C. §§ 1186b(a)(1), 1201-02, 1255; 8 C.F.R. §§ 216.1, 245.2; 22 C.F.R. §§ 42.32(e), 42.41, 42.42. A foreign national investor living in the United States seeking an adjustment of status would file a Form I-485 with USCIS. Finally, through the submission of an I-829 petition, a petitioner may establish eligibility for removal of conditions, at which time USCIS removes the conditions on the investor's permanent resident status and issues a new green card.

4. Here, Plaintiffs represent a group of EB-5 Regional Center Program investors who are awaiting an adjudication of their Form I-485 applications. Specifically, Plaintiffs include the following individuals:

   a. Sujit Kale and Shanmuga Priya ("Kale Family") are native and citizens of India, who purportedly currently reside in New Jersey. *See* ECF No. 1 ¶ 8. According to the Complaint, the Kale Family's I-485 applications were filed on December 17, 2018, with an acceptance date of January 11, 2019. *See* ECF No. 1 ¶ 8. Notably, Plaintiff Sujit Kale purports to reside in the United States pursuant to an H-1B visa. ECF No. 8-4.

   b. Sadana Borra and Karteek Komati ("Borra Family") are native and citizens of India, and purportedly currently reside in Virginia. *See* ECF No. 1 ¶ 14. The Borra Family have pending I-485 Forms based on approved I-526 that has been pending since February 21, 2020. *Id.* Like Plaintiff Kale, the Court notes that the Bora Family purports to reside in the United States pursuant to an H1-B visa. ECF No. 8-3.

   c. Juexiao Ning and Fangfang Wang ("Ning Family") are native and citizens of China. Plaintiff Ning has an approved I-526 and a I-485 that has been pending since March 31, 2020. ECF No. 1 ¶ 16. Fangfang Wang is the derivative spouse of Plaintiff Ning. *Id.* ¶ 17. Both Plaintiff Ning and Wang purport to reside in Arizona. *Id.* According to Defendants, the Ning Family's I-485 have not been adjudicated because, at this time, there are no visas available for Chinese nationals. *See* Declaration of Eliel Aguilera ("Aguilera Decl.") at ¶ 9. The Ning Family purports to reside in the United States pursuant to an H1-B and H-4 visa. ECF No. 8-2.

   d. Plaintiff Srujana Dongari and Prasanth Koduri ("Dongari Family") are native and citizens of India. ECF No. 1 ¶ 18. Plaintiff Dongari has an approved I-526 and I-485 that has been pending since March 30, 2020. *Id.* Plaintiff Koduri is a derivative spouse of Plaintiff Dongari. *Id.* The Dongari Family purportedly resides in California pursuant to a H1-B visa. *Id.* ¶¶ 18-19. Defendants represent that their I-485s are currently under review and are being adjudicated by CSC. *See* Aguilera Decl. ¶ 9.

5. In the instant application, Plaintiffs seek an immediate temporary restraining order ("TRO"), requiring Defendants to adjudicate Plaintiffs' Forms I-485, Application to Register Permanent Residence or Adjust Status, on or before June 30, 2021. According to Plaintiffs, the Regional Center Program has historically been tied to appropriations bills authorizing the program's usage for a finite period. Upon reauthorization of the EB-5

4

Regional Center Program, Congress sets a new expiration date, which has caused the program to be reauthorized for varying periods. Plaintiffs explain that the latest reauthorization, passed through the Consolidated Appropriations Act, 2021, extended the Regional Center Program through June 30, 2021. *See* Pub. L 116-260, Div. O – Extensions and Technical Corrections, Title I, § 104. Thus, Plaintiffs contend that if the Regional Center Program is "not renewed by Congress, investors and their family members […] who have invested through the Regional Center Program and who have not yet obtained conditional permanent residence in the United States, will lose their eligibility to obtain a green card through their investments if the Program is not extended." (Pl. Moving Br. at 6.) Plaintiffs acknowledge that draft bills have been introduced to reauthorize the program, but they claim, on information and belief, that "there appears to be little consensus on the bills."

6. In response, Defendants argue that Plaintiffs' application should be denied for several reasons, including improper venue, lack of subject matter jurisdiction, and a failure to demonstrate irreparable harm. Specifically, as it relates to irreparable harm, Defendants submit that the Regional Center Program has been "renewed numerous times since it was first authorized in 1992." (Def. Opp. Br. at 2.) And, more importantly, "each time the program has lapsed, USCIS has held the adjudication of I-526s and I-485s until the program was reauthorized." (*Id.*) Thus, "[o]nce reauthorized, the adjudications resumed in the same order from before the temporary expiration." (Id.) Furthermore, Defendants represent that if a lapse does occur, "[USCIS] will follow the same or substantially similar guidance as in the past, and adjudications of I-485s will be placed on hold immediately

following the lapse." *See* Aguilera Decl. at ¶ 16. Defendants ensure that the adjudication of those applications would resume following any reauthorization. *Id.*

7. To justify the extraordinary relief of a preliminary injunction, a plaintiff must demonstrate (1) a likelihood of success on the merits, (2) that denial would cause irreparable harm to the plaintiff, (3) that granting the injunction would not cause irreparable harm to the defendant, and (4) that the injunction would be in the public interest. *See Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998). The same standard applies to temporary restraining orders. *See Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999). A plaintiff must show that all four factors weigh in favor of an injunction or temporary restraining order. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Such preliminary relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (internal quotation marks omitted).

8. At the outset, the Court agrees with Defendants' position that as to the likelihood of success, the Court lacks subject matter jurisdiction, and therefore, it cannot provide Plaintiffs the relief they seek. In Plaintiff's Complaint, under the jurisdiction section, they set forth that the Court possesses jurisdiction to compel USCIS to adjudicate their I-485 applications pursuant to the following: 1) 28 U.S.C. §§ 1331 and 1361 (mandamus), 2) 5 U.S.C. § 701, *et. seq.* (Administrative Procedure Act, "APA"), and 3) 28 U.S.C. § 2201 (Declaratory Judgment Act). (*See* ECF No. 1 at ¶ 25.)

9. First, as it relates to mandamus relief, section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the

plaintiff." 28 U.S.C. § 1361. Mandamus relief under section 1361 is an "extraordinary remedy" which "will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Indeed, the Third Circuit has expanded on this concept, stating:

> in order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act "devoid of the exercise of judgment or discretion." An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt.

*Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987) (quoting *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972) (*en banc*) (citations omitted), *rev. on other grounds*, 418 U.S. 166, (1974)).

10. Here, the Third Circuit has unequivocally found that "USCIS's adjudication of an adjustment of status application is 'committed to agency discretion,'" *U.S. ex rel. Vaso v. Chertoff*, 369 F. App'x 395, 400 (3d Cir. 2010) (quoting 8 U.S.C. § 1255(a)), and emphasized that "writs of mandamus are only available to compel 'a legal duty which is a specific, plain ministerial act devoid of the exercise of judgment or discretion.'" *Id.* (quoting *Harmon Cove Condominium Ass'n, Inc.*, 815 F.2d at 951). Indeed, Plaintiffs cannot circumvent the litany of the Third Circuit and New Jersey district court decisions that have found that USCIS does not have a non-discretionary duty to adjudicate I-485 applications, nor can Plaintiffs distinguish the present facts from the circumstances presented in those cases. *See Serrano v. Quarantillo*, No. 06-5221, 2007 WL 1101434 (D.N.J. Apr. 9, 2007); *Qiu v. Chertoff*, 486 F. Supp. 2d 412, 416 (D.N.J. 2007) ("Defendants are also correct that their decision to withhold adjudication at this time falls

within their discretion, thus precluding jurisdiction under the mandamus statute and the APA."); *see also Shah v. Chertoff*, No. 07-874, 2007 WL 2084891, at *4 (D.N.J. July 18, 2007); *Tao v. Mueller*, No. 07-804, 2007 WL 2459423, at *2 (D.N.J. Aug. 23, 2007); *Liu v. Gonzales*, No. 07-1797MLC, 2007 WL 2916511, at *6 (D.N.J. Oct. 5, 2007); *Cholewinska v. Chertoff*, No. 07-518, 2008 WL 7006121, at *3 (D.N.J. Feb. 21, 2008); *Da Silva v. Gonzales*, No. 07-2278, 2008 WL 820163, at *3 (D.N.J. Mar. 26, 2008); *Liu v. Chertoff*, No. 07-3452, 2008 WL 1925297, at *3 (D.N.J. Apr. 30, 2008); *Conigliaro v. Chertoff*, No. 07-1543, 2008 WL 108953, at *4 (D.N.J. Jan. 9, 2008); *Qiao Er Wu v. Napolitano*, No. 11-295, 2011 WL 4550193, at *4 (D.N.J. Sept. 29, 2011); *Kim v. Holder*, No. 12-5032, 2013 WL 335947, at *3 (D.N.J. Jan. 25, 2013).[1] The Court is not persuaded by Plaintiffs' argument that several of these cases are attributed to only two judges and that "the unpublished Third Circuit case relied upon by Defendants, *U.S. ex rel. Vaso v. Chertoff*, 369 F. App'x 395 (3d Cir. 2010), also involved a *pro se* petitioner." (Pl. Reply Br. at 6.) Indeed, the import of these cases is clear: USCIS's role in adjudicating I-485 applications, whether approval or timing, is a discretionary one.

11. As the court found in *Qiu*, 486 F. Supp. 2d at 418, there are no provisions "establishing a specific time frame for adjudication of adjustment of status applications, nor an accompanying provision conferring a right to judicial review." Accordingly, "[t]his is an indication that, with respect to an application for adjustment of status, Congress did not intend to limit the discretion of immigration officials by specifying a certain time period

---

[1] The Court notes that two courts in this district have diverged from the majority view and found that they possess subject matter jurisdiction. *See Pool v. Gonzales*, No. 07-258, 2007 WL 1613272, at *3 (D.N.J. June 1, 2007); *Lei Xu v. Chertoff*, No. 07–366, 2007 WL 2033834, at *3 (D.N.J. July 11, 2007). However, both of those decisions pre-date the Third Circuit's decision in *Vaso*, 369 F. App'x at 400.

8

within which they must act." *Id.* While Plaintiffs request that this Court compel USCIS to adjudicate Plaintiffs' applications more swiftly, their instant request is not one properly before the Court under the mandamus statutes.

12. Next, the Court also lacks subject matter jurisdiction under the APA for substantially the same reasons as set forth above with respect to mandamus relief. The APA provides that "when an agency is compelled by law to act within a certain time period ... a court can compel the agency to act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004). However, a court only has jurisdiction to compel an agency to act within a certain time period under the APA <u>when the agency is compelled by law to act within a certain time period</u>. Plaintiffs rely on 8 U.S.C. § 1571(b), which provides: "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." However, as Plaintiffs candidly concede, this is "not a mandatory timeframe." (Pl. Reply Br. at 9); *see Uranga v. USCIS*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020) (noting that a "'sense of Congress' preamble may be non-binding, *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 at n. 26 (D.C. Cir. 2015), […], and that this type of statutory provision represents 'a statement of opinion' rather than a 'statement of fact.'") Rather, as found above in *Qiu*, 486 F. Supp. 2d at 418, there are no provisions "establishing a specific time frame for adjudication of adjustment of status applications." Like the court in *Qiu*, I am persuaded by cases which have held that immigration officials have a non-discretionary duty to adjudicate I–485 applications. Specifically, *Qiu* emphasized that unlike other sections of the United States Code—which empower the Attorney General or the Secretary of Homeland Security to adjudicate an application by a statutory time period for adjudication and an explicit provision granting

applicants a right to judicial review—in the context of an adjustment of status application, no such statutory provision exists; nor can Plaintiffs point to an accompanying provision conferring a right to judicial review. Thus, this is an indication that, "with respect to an application for adjustment of status, Congress did not intend to limit the discretion of immigration officials by specifying a certain time period within which they must act." *Id.* In addition, the APA also does not apply to agency action that is committed by law to the discretion of the agency. 5 U.S.C. § 701(a)(2). Like their reliance on mandamus relief, Plaintiffs cannot predicate jurisdiction on the APA.

13. Finally, while the Complaint does not assert jurisdiction under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, in the interest of completeness and in an abundance of caution, I examine whether the INA may confer jurisdiction in this context.[2] I find that it does not. The INA divests the district courts of the authority to review two categories of cases: (1) "any judgment regarding the granting of relief," and (2) "any other decision or action ... specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See* 8 U.S.C. § 1252(a)(2)(B)(i), (ii). In support of jurisdiction, Plaintiffs rely predominantly on *Aslam v. Mukasey*, 531 F.Supp.2d 736, 741 (E.D. Va. 2008), an out-of-district case. In that case, the plaintiff sought to compel the defendants to take action on his I-485 application for adjustment of immigration status to lawful permanent resident. *Aslam*, 531 F.Supp.2d at 737-38. In that regard, the plaintiff alleged, and the government confirmed, that the only obstacle to final adjudication of his application was the Federal Bureau of Investigation's failure to complete and submit

---

[2] The Government included a discussion of the INA in its opposition, and Plaintiffs responded to it, while failing to acknowledge that the Complaint does not base this Court's jurisdiction on the INA.

to USCIS a name check of the plaintiff. *Id.* As a result of that delay, the plaintiff's application with USCIS had been pending for nearly three years. *Id.* In finding that it had subject matter jurisdiction, the district court focused on a plain reading of section 1252(a)(2)(B)(ii), which it found "confirms that the INA only strips the judiciary of jurisdiction to review those discretionary decisions and actions that are "specified under this subchapter," referencing subchapter II of Chapter 12 of Title 8. *Id.* at 739-41. Thus, the court noted that "[a]lthough the INA places the decision of whether to adjust status in the sound discretion of the Secretary, it says nothing about the Secretary's discretion to set the pace of that decision." *Id.* at 740.

14. However, the Court disagrees, finding the later rulings within this district in *Kim v. Holder*, No. 12-5032, 2013 WL 335947, at *3 (D.N.J. Jan. 25, 2013) and *Singh v. Holder*, No. 14-387, 2015 WL 1399055, at *5 (D.N.J. Mar. 25, 2015), more persuasive. In *Kim*, the plaintiffs were also awaiting adjudication of their I-485 applications, and they became dissatisfied with the pace of the agency determinations. *Kim*, No. 12-5032, 2013 WL 335947, at *3. As a result, the plaintiffs petitioned the court for mandamus relief, asking the court to speed up the application process. Specifically, with respect to subject matter jurisdiction under the INA, however, the court found:

> 8 C.F.R. § 103.2(b)(18), entitled "Withholding Adjudication," confers discretion on the immigration officers and directors to withhold adjudication while applications like those submitted by plaintiffs are being investigated. Because Section 1252 of the Immigration and Nationality Act indicates that this Court lacks jurisdiction over matters within the discretion of the Attorney General or the Secretary of Homeland Security, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), and because 8 C.F.R. § 103.2(b)(18) "establishes that withholding adjudication is a matter of such discretion," *Qiao Er Wu*, 2011 U.S. Dist. LEXIS 111499, at *10, 2011 WL 4550193 this Court lacks subject matter jurisdiction over the plaintiffs' challenges. *Accord id.* (dismissing the claims of an applicant who filed a petition after not getting an agency determination for three years); *Abanov v. Gonzales*, 2007 U.S.

11

> Dist. LEXIS 72630, 2007 WL 2872765 (S.D. Tex. Sept. 28, 2007) (collecting cases and holding that Congress has made it clear that federal courts are without jurisdiction to hear complaints regarding the USCIS's pace of adjudication); *Bugulu v. Gonzalez*, 490 F.Supp.2d 965, 967 (W.D.Wis. 2007) (holding that federal courts lack "subject matter jurisdiction ... concerning the delay in processing ... adjustment status application[s] because it is a discretionary action by the [USCIS] pursuant to [Section 1252]").

*Id.* (emphasis added).[3] Like the courts in *Kim* and *Singh*, I find it significant that section 1252 applies not only to USCIS's grant or denial of an application for adjustment of status, but also to "<u>any other decision or action</u>" within USCIS's discretion. *Kim*, No. 12-5032, 2013 WL 335947, at *3 (citing *Bian v. Clinton*, 605 F.3d 249, 251 (5th Cir. 2010), *vacated as moot*, 2010 WL 3633770 (5th Cir. Sept.16, 2010)) (emphasis added). Thus, the "absence of a Congressionally mandated deadline and national security considerations further support the conclusion that the pace of adjudication is discretionary and thus outside the jurisdiction of this Court." *Singh*, No. 14-387, 2015 WL 1399055, at *8. Indeed, "the Supreme Court has stated that judicial review 'is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 830(1985)). Here, as stated above, no timeframe exists within which the Attorney General or the Secretary of Homeland Security must complete the review of an application for adjustment status. Finally, it is worth noting that the Third Circuit in *Khan v. Att'y Gen. of U.S.*, 448 F.3d 226,

---

[3] In their briefing, Plaintiffs did not address jurisdiction under the Declaratory Judgement Act; it appears that they have abandoned this basis. Indeed, the Declaratory Judgement Act grants federal courts the authority to render declaratory relief, but it "does not and cannot serve as an independent basis for subject matter jurisdiction." *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 634 (7th Cir. 2003); *see Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n. 2 (3d Cir. 1989). In other words, the Declaratory Judgement Act cannot serve as an independent basis for the Court's jurisdiction. *Liu v. Gonzales*, No. 07-1797, 2007 WL 2916511, at *6 (D.N.J. Oct. 5, 2007).

232–33 (3d Cir.2006), explained that the Fifth Circuit Court of Appeals has "adopted the correct reading of § 1252(a)(2)(B)(ii)" as it pertains to specified authority for a discretionary action of the Secretary. The Fifth Circuit, in turn, has since found that the INA precludes jurisdiction over a claim of unreasonable delay in adjudication of an adjustment of status application. *Bian*, 605 F.3d at 255. In particular, the Fifth Circuit concluded that "Congress has expressly precluded judicial review of the USCIS's pace of adjudication when the agency acts within its discretion and pursuant to the regulations that the agency deems necessary for carrying out its statutory grant of authority." *Id.*; s*ee also Mudric v. Att'y Gen. of the U.S.*, 469 F.3d 94, 99 (3d Cir.2006) ("the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible"); *Ryan v. Dedvukaj*, 2009 U.S. Dist. LEXIS 106077, 2009 WL 3809813 (E.D. Mich. Nov. 13, 2009) (same); *Assadzadeh v. Mueller*, 2007 WL 3252771 (E.D .Pa. Oct.30, 2007) ("neither the INA, USCIS's regulations, or the APA provide the requisite firm deadline for adjudicating Plaintiff's application for naturalization, a discretionary immigration benefit. The APA does impose a 'reasonable time' requirement for adjudication of naturalization applications, but this is not a 'hard-and-fast deadline.' Absent a specific mandate entitling Plaintiff to naturalization or processing of his application within a specific time-frame, Plaintiff does not have a constitutional right to timely adjudication of his application"). In conclusion, TRO shall not issue because Plaintiffs have failed to demonstrate a likelihood of success of their claims—namely that the Court lacks subject matter jurisdiction over their claims.

15. Moreover, even if the Court had subject matter jurisdiction, a TRO would not issue based on Plaintiffs' inability to demonstrate irreparable harm. Fatally, Plaintiffs fail to establish that the irreparable harm they allegedly face is more than speculative. *See*, *e.g.*, *Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018) ("The irreparable harm alleged must be actual and imminent, not merely speculative."); *see also Cont'l Grp., Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (internal quotation marks and citation omitted) ("[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties."). Here, as Defendants assert, Plaintiffs are not certain to obtain an EB-5 immigrant visa and so their loss of this not-yet-obtained benefit is speculative. Moreover, those Plaintiffs who currently hold nonimmigrant visas have not alleged that they stand to lose their current visas to remain in the United States. Rather, Plaintiffs stand to lose their opportunity to obtain <u>EB-5 visas</u>, or perhaps their place in the USCIS processing queue. Regardless, even if the Regional Center Program expires on June 30, 2021, Plaintiffs provide no evidence that their EB-5 visa applications will be nullified or that they will be sent to the back of the queue, or that they will lose residency in the United States altogether.

16. Rather, Defendants have represented to the Court that neither of these events will occur. As stated above, Defendants represent that if a lapse does occur, "[USCIS] will follow the same or substantially similar guidance as in the past, and adjudications of I-485s will be placed on hold immediately following the lapse." *See* Aguilera Decl. at ¶ 16. Thus, adjudication of those applications would resume following any reauthorization, and they would be adjudicated in the order that they were initially processed. *Id.* Finally, to the extent Plaintiffs' investments in NCEs are placed at risk by the expiration of Congressional

authorization, this is precisely the kind of economic harm that can be redressed through money damages, and is not, therefore, irreparable. *See*, *e.g.*, *Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 n.3 (3d Cir. 1988) (noting that the availability of money damages for an injury typically will preclude a finding of irreparable harm).

17. Accordingly, Plaintiffs' request for a temporary restraining order is denied.[4]

**IT IS** on this 28th day of June, 2021,

**ORDERED** that Plaintiffs' Motion a Temporary Restraining Order (ECF No. 8), is hereby **DENIED**, based on their failure to demonstrate that their claims will likely succeed on the issue of subject matter jurisdiction, or that they will face irreparable harm; and it is further

**ORDERED** that within three days from the date of this Order, Plaintiffs shall advise the Court why this case should not be dismissed based on the Court's finding, albeit in the context of a TRO application, that subject matter jurisdiction is lacking.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[4] In addition, even if the Court had subject matter jurisdiction, only Plaintiffs Sujit Kale and Shanmuga Priya reside in New Jersey, and therefore, the remaining Plaintiffs would be dismissed for improper venue. Although the Court need not rule on Plaintiffs' argument related to permissive joinder under Fed. R. Civ. P. 20, the Court nonetheless notes that such an argument lacks merit, and severance of those claims would be appropriate.